**Walter BATIZ, Petitioner**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 04–2012 (SEC).**

United States District Court, D. Puerto Rico.

Sept. 24, 2007.

Joseph C. Laws, Yasmin A. Irizarry, Federal Public Defender's Office, Hato Rey, PR, for Petitioner.

Jose A. Ruiz–Santiago, Nelson J. Perez–Sosa, Mariana E. Bauza, United States Attorney's Office, San Juan, PR, for Respondent.

## OPINION & ORDER

SALVADOR E. CASELLAS, District Judge.

Before the Court is Petitioner Walter Batiz's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C.A § 2255, seeking to set aside the sentence imposed by the Court in Criminal Case

No. 97–82(SEC) **(Docket # 1).** On July 23rd, 2007, the Court issued an Opinion and Order whereby it **DENIED in part and HELD IN ABEYANCE in part** Petitioner's Motion. The Court scheduled an evidentiary hearing for August 3, 2007 for the parties to bring forth evidence regarding Petitioner's claims for ineffective assistance of Counsel during pre-trial proceedings and plea negotiations. *See,* Docket # 14. The Court appointed the Federal Public Defender to assist Counsel during this process. An evidentiary hearing was held on August 15, 2007 and August 30, 2007. *See,* Dockets ## 19 & 22. Having heard the witnesses' testimony, and reviewed the evidence on the record and the parties' briefs, Petitioner's Motion to Vacate Sentence (Docket # 1) will be **DENIED.**

A more detailed background of this case is set forth in our Opinion and Order of July 23, 2007 (Docket # 14). The core of Petitioner's § 2255 motion is that Attorney García (Petitioner's counsel during the criminal proceedings and appeal) provided ineffective assistance of counsel that adversely affected Petitioner. Although Petitioner presented multiple arguments in support of his ineffective assistance claims, only two survived our previous Opinion and Order: (1) that Counsel did not explain to Petitioner the elements of the offense charged in the indictment and the Government's burden of proof at trial, and that had Counsel done so he would have pleaded guilty instead of going to trial; and (2) that Counsel failed to secure a plea offer from the Government, as instructed by him, pursuant to which he would have been sentenced for 15 years instead of 20. After hearing the evidence presented by both parties, the Court finds that both of Petitioner's assertions lack support on the record. Let's see.

The Court heard the testimony of Petitioner, his former Counsel, Ramón García, Esq., and former AUSA Sonia Torres (who tried Petitioner's criminal case). *See,* Dockets ## 27 & 28 (Transcripts for the Evidentiary Hearing). The Court also admitted into evidence Attorney García's vouchers during the criminal proceedings,[1] and some letters exchanged between defense Counsel and the prosecution regarding plea negotiations.

**Applicable Law and Analysis:**

A convicted defendant who attacks his conviction and/or sentence by way of claiming ineffective assistance of counsel must meet the two-part test established by the U.S. Supreme Court in *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This requires the criminal defendant to "establish that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Knight v. Spencer,* 447 F.3d 6, 15(1st Cir.2006) (*quoting, Smiley v. Maloney,* 422 F.3d 17, 20 (1st Cir.2005) (*quoting, Strickland,* 466 U.S. at 684, 104 S.Ct. 2052)). Relevant to the first part of the test, the U.S. Supreme Court has stated that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 700, 104 S.Ct. 2052.

Even if a criminal defendant overcomes this rather formidable obstacle, his ineffective assistance claim will not prosper unless he can also establish the second prong

---

1. Attorney García is a member of the CJA Panel, and was appointed by the Court to represent Petitioner in Criminal Case 97–82. Members of the CJA Panel must submit a vouchers for the Court's approval, detailing the hours spent in a case and a brief description of the work done.

of the test. *See, Id.* That does not mean, however, that the Court must address the two prongs of the test in the order above, or even analyze both. If the Court is satisfied that the defendant cannot establish either that Counsel was deficient *or* that such deficiency prejudiced the defendant, it may dispose of the claim without further ado. *See, Id.* at 697, 104 S.Ct. 2052.

Finally, the Court's evaluation of Counsel's performance must be highly deferential. *Id.* at 691, 104 S.Ct. 2052. That is, the movant faces a difficult task, since the standard for review of an attorney's performance is a "very forgiving" one. *See, U.S. v. Theodore,* 468 F.3d 52, 58 (1st Cir.2006) (*citing, Delgado v. Lewis,* 223 F.3d 976, 981 (9th Cir.2000)).

We review Petitioner's arguments below.

### Failure to Explain the Charges

 First, we note that Petitioner's motion is internally inconsistent, as was his testimony before the Court. We explain. Petitioner's motion avers that he decided to go to trial because Counsel failed to adequately explain the elements of the offense charged in the indictment and the Government's burden of proof. *See,* Docket # 1, at p. 16. He contends that he went to trial under the false impression that in order for the jury to convict him, the Government would need to prove beyond a reasonable doubt that Petitioner committed the overt acts attributed to him in the indictment,[2] which he claimed he did not commit *Id.,* at p. 15. Had Counsel explained to Petitioner that the Government did not have to prove he committed the overt acts, Petitioner argues, he would have pleaded guilty instead of going to trial. *Id.,* at p. 16. However, Petitioner proffered a different reason to go to trial:

that Attorney García failed to accept the Government's plea offer when instructed, and when he attempted to secure it, the offer was no longer available. *Id.,* at p. 14. Petitioner cannot have the cake and eat it too. Either he decided to go to trial under Counsel's erred legal advice, or he was forced to go to trial because Counsel failed to secure a plea offer.

Petitioner's allegations that counsel failed to explain the charges to him is also unsubstantiated by the record. As per Attorney García's interim voucher, approved by the Court, he met with the Petitioner at least 15 times prior to trial. *See,* Joint Exh. # I. During these meetings Petitioner's counsel dedicated at least 22.5 hours either explaining the charges to the Petitioner, discussing the Government's evidence against Petitioner or the case as a whole. Attorney García also testified that he went over the indictment with the Petitioner and explained to him the elements of a drug conspiracy and the Government's burden of proof. *See,* Docket # 27, at pp. 38–39. Petitioner also testified during direct examination the following:

Question: Did you ever receive a copy of the charging document? . . . The indictment?

Answer: Yes, yes.

Question: Okay. Did you go over that indictment with your attorney?

Answer: Yes

A review of the record as a whole contradicts Petitioner's testimony that his counsel did not explain **anything** to him with regard to his case and the Government's burden of proof. *See,* Docket # 27, at pp. 10, 14(on direct, after being questioned as to his knowledge with regards to the overt acts he said "I didn't have any understanding on that."; then again, he

---

2. *See,* Docket # 444 of Criminal Case 97– 82(SEC).

was asked if his attorney ever explained what the charges in the indictment were, he said "none (sic)").

The Court believes that Petitioner's inconsistencies, as well as the record as a whole, discredit Petitioner's account that Counsel failed to explain the elements of the offense, or that he gave Petitioner erred advice during the pretrial stage. The Court is not required to, and does not, take at face value Petitioner's averments, which did not survive the scrutiny of direct and cross examination. Petitioner's next argument only reaffirms the Court's determination.

*Failure to accept the Guilty Plea*

■ Petitioner also contends that Attorney García was ineffective when he failed to accept the Government's plea offer of 15 years immediately, as instructed by him, because he hoped the Government would offer a better one if he could get Co-defendant Omar Torres–Bonilla to also plead guilty. Docket # 1, at p. 14; *see also,* Docket # 27, at pp. 10–11. He claims that when Attorney García found out that Co-defendant Torres-Bonilla had already pleaded guilty, he attempted to accept the plea offer only to learn that it was no longer available. *Id.,* at p. 13.

As with his previous allegations, Petitioner's testimony was also inconsistent in regards to this matter. During direct examination he stated that he had agreed to follow Attorney García's advice to wait and see if he could obtain a guilty plea from Co-defendant Torres–Bonilla in order to improve the Government's plea offer. *See,* Docket # 27, at p. 10 (Petitioner stated that "[w]hen Mr. García comes over with that 15 year offer I said fine, that I do want to sign it. And he tells me to wait to see if Omar also signs one for 15 years, to

see if the time can be lowered **and I told him fine.**") Upon further questioning Petitioner contradicted his prior testimony and stated: "I responded to him that I didn't care what Omar did, whether he accepted or not accepted the plea[; t]hat I wanted to accept that plea." *Id.,* at p. 12.

Furthermore, Petitioner averred in his motion, and testified in the hearing, that he always wanted to accept the Government's offer for fifteen years, even during trial. *See,* Docket # 27, at pp. 24–25. However, Attorney García testified that not only did he reject the 15 year offer on many occasions, but Petitioner's wishes all along was for Counsel to attempt to obtain a ten year plea offer from the Government. *Id.,* at pp. 43–44. The record also shows that there was a group of attorneys that were attempting to obtain a package plea offer from the Government. Among these attorneys was Attorney García, and Attorney Sandoval, counsel for Co-defendant Manuel Pérez Colón.[3] *See,* Docket # 20, Exhibit # 2. In a letter addressed to Miguel Pereira, Deputy Chief of the U.S. Attorney's Office, Criminal Division, Attorney Sandoval, with the approval of the defense attorneys mentioned above, requested a meeting to engage in further plea negotiations on behalf of their clients to obtain a package plea offer from the Government with lower sentences than those previously offered. *Id.,* at p. 4. In said letter, Attorney Sandoval, as intermediary for other defense counsel, informed Mr. Pereira of the plea counter-offers made by the defendants, among them Petitioner, and stated that they insisted on lower numbers because they believe the government had it wrong. *See,* Exh. 2, Docket # 20, at p. 4. This letter confirmed Attorney García's testimony to the effect that the movant never agreed to a 15 year

3. Attorneys Lydia Lizarribar, Arturo Negrón, Roberto Odasz, Irma Valdejulli and Enrique Vélez, were also cooperating in this joint effort to secure a package plea.

offer but that he always wanted to obtain a 10 year offer. *Id,* at p. 2; *see also,* Docket # 27, at p. 33.

Attorney García also denied during the hearing telling Petitioner not to accept the fifteen years offer or to wait for Co-defendant Torres–Bonilla to plea; to the contrary, he recommended the offer because he thought it was reasonable. *See,* Docket # 27, at p. 43. This is consistent with Attorney Sandoval's letter to Pereira, Exhibit # 2, at Docket # 20, whereby Co-defendant Torres–Bonilla was not included because he was not part of the joint effort to attempt to secure a package plea. Docket # 27, at p. 61.

On another note, Petitioner affirmed during the hearing that he wanted to plead guilty because he heard from his fellow inmates that the possibilities of being acquitted after a federal jury trial were null. *See,* Docket # 27, at p. 10. However, he testified that Counsel never explained to him what his exposure in terms of imprisonment would be in case he was convicted. *See,* Docket # 27, at p. 17. The Court finds it beyond belief that Petitioner would accept a 15 year offer without knowing what his real exposure was in the event of conviction. Moreover, his statements are inconsistent with his prior testimony that he only went to trial because he was led to believe by Counsel that the Government needed to prove the overt acts charged against him in the indictment, which he was certain he did not commit. Notwithstanding Petitioner's testimony, the Court gives full credit to Attorney García's statements that he explained to Petitioner what the exposure of being convicted was, to wit, 40 years.[4] *See,* Docket # 27, at p. 38.

Finally, Ms. Sonia Torres, Esq., one of the prosecutors in Petitioner's criminal case, testified that Attorney García met in various occasions with her to engage in plea negotiations. *See,* Docket # 27, at p. 66. She further testified that the fifteen year offer was available during trial, and that Attorney García had informed her that his client was not interested in pleading guilty. *Id.* Attorney García also testified that he informed Petitioner in numerous occasions about the offer and that Petitioner always rejected it. *Id.,* at pp. 43–44. Attorney's extensive meetings with the Petitioner during pretrial proceedings are also evidenced by the interim vouchers submitted by him for the Court's approval. *See,* Joint Exh. I at Docket # 23. As per the voucher, Attorney García met with the Petitioner on September 15, 1998, for three hours and a half to discuss the plea offer and in preparation for trial. *See,* Docket # 1794, Criminal Case 97–82(SEC), at p. 3. Said meeting took place approximately two weeks before trial. *See,* Docket # 1488 of Criminal Case 97–82. The voucher also shows that Attorney García met with AUSA Muldrow on September 28, 1998, approximately one week prior to trial, in relation with the possibility of a plea agreement. *See,* Docket # 1794 of Criminal Case 97–82(SEC), at p. 4.

When taken together, the testimony heard by the Court and the documents introduced into evidence, show that Attorney García was diligent during the plea negotiations. AUSA Sonia Torres testified to that effect; she stated that "Attorney García was always very competent ... we spoke about plea negotiations at one point during (sic), prior to trial and I believe

---

4. The Court notes that at the time of Petitioner's sentencing, which was delayed because of a Motion for New Trial filed by Counsel on behalf of Petitioner, *Apprendi v. New Jersey* had already been decided, and the maximum statutory maximum was 20 years instead of 40 years. However, trial proceedings in Petitioner's case was pre-Apprendi, and, as such, his exposure at that time was 40 years to life imprisonment.

during trial." Docket # 27, at p. 66. Attorney Sandoval's letter also shows that Attorney García was making efforts to obtain a lower offer for his client, as directed by him. *See*, Exh. 2, Docket # 20.

Last, but not least, we must note at this point that the original offer made by the Government was for forty (40) years, and that it was later reduced to fifteen years through Attorney García's negotiations with the prosecutors. *See*, Exh. # 1, Docket # 20; *see also*, Docket # 27, at p. 32.

The Court gives total credit to Attorney García's and Attorney Torres' testimony. The Court also finds Petitioner's allegations not credible; Petitioner's testimony that he insisted upon his Counsel securing a plea offer of 15 years of imprisonment even when his Counsel failed to advise him of the exposure in the event of conviction defies reason. It is also incredible that Attorney García would engage in negotiations with the Government to reduce their original plea offer from forty (40) years to fifteen (15) years, only to then ignore Plaintiff's explicit request to accept said offer. Not only does the Court find unavailing Petitioner's arguments, but the Court also believes that Attorney García's zealous advocacy during Petitioner's criminal case is crystal clear: (1) he got the Government to reduce an original plea offer from 40 years to 15; (2) he vehemently objected to the Court imposing a maximum sentence during sentencing because of Petitioner's minor participation in the conspiracy (Crim. Case No. 97–82(SEC) at Docket # 3100); and (3) he filed a Motion for New Trial (Crim. Case No. 97–82(SEC) at Docket # 1847), which, although rejected by this Court, opened a new window of opportunity to Petitioner: *Apprendi* and a maximum of twenty years.

**Conclusion:**

Because we give no credit to Petitioner's testimony, we hold that his allegations of ineffective assistance of counsel are without merit. As such, his Motion will be **DENIED** and this case shall be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**